**LUHNING et ux. v. STEWART et al.**

No. 3502.

Court of Civil Appeals of Texas. El Paso.

Feb. 25, 1937.

Rehearing Denied March 18, 1937.

fendants claim under the ten-year statute of limitations. Upon an instructed verdict, judgment was rendered for plaintiffs. The record title is in appellees.

Lot 1 is in the northwest corner of the block. Lot 2 is immediately to the east in the northeast corner. Lot 3 is immediately south of 2. Lot 4 adjoins 1 and 3, being immediately south of 1 and west of 3.

Since 1914 defendants have been in continuous peaceable possession of all of the land sued for, openly using and enjoying same. The evidence in this connection is later stated. As to the sufficiency of the evidence to so show appellees make no point, but seek to sustain the action of the court in giving the peremptory instruction upon the theory that defendants' possession was in recognition of and in subordination to the true owner, and therefore not adverse.

In making out their case plaintiffs introduced in evidence an oral deposition of Fred Luhning taken by them some time before the trial, in which Luhning testified:

"Q. Did you know that this property, being Lots 1 and 4, were claimed by Laura Stewart? A. No sir. I went to the courthouse to investigate and I couldn't find where there was any owners, according to the record in the courthouse, and I took the proposition up with our county commissioner, who you know, Henry Deats, and he advised me to fence it and I would find the owner, but the owner hasn't shown up to this day."

"Q. It is just in your own mind what you claim? A. All I went after was to see about the land I actually wanted to buy and couldn't buy. There was no owner.

"Q. What was your conversation with Henry Deats? Who was he? A. He was county commissioner.

"Q. Why did you go to him? A. I went to the courthouse and they said that—they gave me the party's name, and the party could not be found anywhere. Then I went to Mr. Deats and asked him, and he said 'Fence it and you will soon find somebody that will own it', but they have not up until this last year, when you brought the suit."

"Q. You went to Henry Deats to see if you could find out if Laura Stewart or anybody else owned it? A. That is it.

"Q. If you had found the owner you would have made the same arrangements you did with the others? A. I would have either leased it or bought it.

Lewis Fisher, of Houston, for appellants.

Felix A. Raymer and R. E. Seagler, both of Houston, and Maco Stewart and Noble Carl, both of Galveston, for appellees.

HIGGINS, Justice.

Laura N. Stewart and her mineral estate lessee, the Humble Oil & Refining Company, brought this suit February 16, 1934, against Fred Luhning and wife to recover two ten-acre tracts of land, which may be here described as lots 1 and 4, in block 8, of the D. R. Beatty subdivision in the northeast part of the W. K. Wilson league. The de-

"Q. You remained in that frame of mind until this law suit was filed? A. Yes: that makes it pretty near twenty-four years."

Upon the trial testifying in his own behalf, Luhning, in response to questions by his counsel, referring to the oral deposition, testified:

"Q. You said you went to Henry Deats to see if you could find out who owned it? A. That is it.

"Q. Then Mr. Stewart asked you this: 'If you had found the owner you would have made the same arrangements you did with the others'? A. That was back in 1913.

"Q. You answered 'I would have either leased it or bought it.' Then he asked you 'You remained in that frame of mind until this last suit was filed.' What was your thought— "

Here counsel for plaintiffs objected, the objection was sustained, and witness not permitted to answer. The record does not show what his answer would have been.

Error is assigned to the action of the court in sustaining the objection mentioned above and in refusing to permit Luhning to testify in explanation of those portions of his oral deposition upon which appellees base their contention that his possession, by his own testimony, was shown to be not hostile to the title of the true owner.

■ As stated above, the record does not disclose what his testimony would have been if he had been permitted to testify. In this condition of the record the ruling presents no reversible error. Joy v. Craig (Tex.Civ.App.) 94 S.W.(2d) 524; Olivas v. El Paso E. Co. (Tex.Civ.App.) 54 S.W.(2d) 154; Knight v. Texas & N. O. Ry. Co. (Tex. Civ.App.) 26 S.W.(2d) 672.

■ For the reason later stated, the judgment will be reversed, and upon retrial Luhning has the right to explain or contradict the statement contained in his deposition. Smith v. Olsen, 92 Tex. 181, 46 S. W. 631; Harrison v. Orr (Tex.Com.App.) 296 S.W. 871. Appellees cite Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24, and Thompson v. Moor (Tex.Com.App.) 14 S.W.(2d) 803, 804, in support of their theory.

The report of Mhoon v. Cain in 77 Tex. 316 does not state the evidence in detail. The report of the case in 14 S.W. 24 does so, and it very plainly shows the defendant in that case was holding in recognition of and subordinate to the real title for some time after his entry and until he purchased from Williams; that the ten-year prescriptive period had not elapsed between such purchase and the filing of the suit. That case is in point only as to the rules of law it announces.

In Thompson v. Moor, the defendant on the trial testified: "I have been claiming it ever since I have been down there against everybody, until such time as they might show me they had rights or something there." It was held this disclosed continued possession in subordination to the true ownership, and not otherwise contradicted.

Luhning's testimony in his oral deposition to the effect that if he had found the owner he would have leased or bought the land and had continued in that frame of mind until the suit was filed, if considered alone and independent of other portions of his testimony given upon the trial, supports the appellees' theory.

The evidence shows:

Block 8 consisted of four lots, each containing about 10 acres. Appellants acquired lot 3 in 1909, and built a house thereon in 1912, which has been their home ever since. In 1912 they fenced lot 3, and in 1913 fenced lot 4, connecting the fence to that surrounding lot 3. In 1914 they fenced lots 1 and 2, connecting the same to the fence surrounding lots 3 and 4. The fences entirely surrounded the block, with a cross-fence running east and west dividing lots 1 and 2 from 3 and 4. Another cross-fence ran north and south between lots 3 and 4. These fences have remained in their original position, and have been kept in repair sufficient to turn cattle. Appellants used and enjoyed all of the land from 1914 down to the trial of the suit, using lot 4 for hogs, calves, hens, turkeys, and geese, and also for farm equipment wagons, and buggies; a pigpen being situated thereon. Lots 1 and 2 were used for pasturage and hay purposes.

Henry Miller, witness for defendants, who had lived in the vicinity since 1923 and known Fred Luhning since that time, testified:

"A. I asked him when I first got acquainted with him if he owned that property and he said he did.

"Q. What property was he speaking of? A. Where he was living.

"Q. The property under fence? A. The property under enclosure.

"Q. That 40 or 50 acres? A. Yes."

Henry Wilkes, who had lived in the vicinity and known Luhning since 1914, testified that in the latter part of 1916 Luhning offered to rent him the north part of the land for farming purposes.

George Smith, who had known the defendants for 30 or 35 years, testified that Luhning, 15 or 16 years before, told him he (Luhning) owned that land.

L. S. Fields, who had known the Luhnings since 1914, testified:

"Q. Did you ever talk to Mr. Luhning about who owned that land? A. Yes sir;. he always referred to it as his property."

In another portion of the oral deposition Luhning testified:

"Q. How long have you been claiming Block 8? A. Well, about as long as I have lived there,—around 24 years."

Upon the trial, testifying in his own behalf, in response to questions by his counsel, Luhning testified:

"Q. What was your purpose in trying to find out who owned the land, if anybody owned it? A. I wanted to put up a barn and I didn't want to put the barn on the other place because in case of fire, and if I could get the other piece of ground it would have been much better for me on account of hauling in and out.

"Q. If you had found out who the owner was what would you have done? A. I would have tried to lease it or bought it. I would rather buy it than lease it.

"Q. But not being able to find the owner from the tax assessor's office you went ahead and fenced it? A. Yes sir, I did just as the county commissioner asked me to do.

"Q. Who has been claiming that land since you fenced it? A. I don't know whether—

"Q. Has anybody claimed it? A. As far as I know, since 1934 it is supposed to have been a party named Laura Stewart.

"Q. No, prior to that time. A. Before, nobody.

"Q. Have you claimed it? A. Yes sir.

"Mr. Stewart: That is a leading question.

"Court: It is leading.

"Q. Who has claimed it? A. I do now and I did then."

Referring to the oral deposition, he further testified:

"Q. Mr. Luhning, on the day that Mr. Stewart took your deposition at Hulen Park did he ask you this question: 'If you had found the owner you would have made the same arrangements you did with the others', and your answer was 'I would have either leased it or bought it.' Then he asked you: 'You remained in that frame of mind until this law suit was filed', and you said 'Yes; that makes it pretty near twenty-four years'? A. Yes sir.

"Q. On that same day I asked you this: 'You didn't claim all the land under the big fence because you rented some'? A. That is correct.

"Q. You further said that you had some donation? A. Yes sir.

"Q. I asked you: 'That had nothing to do with the big pasture, and you have been claiming it as yours ever since you put that fence around it'. What were you referring to then? A. To Block 8.

"Q. You answered: 'I couldn't find any owners', and I asked you: 'And not finding any owners you have claimed it', and you answered 'Yes' to that? A. Yes sir."

Defendants also introduced in evidence an ex parte deposition of Fred Luhning, taken by plaintiff Humble Oil & Refining Company, from which we quote:

"Q. You are the owner of Lot No. 3 in Block 8, of the Beatty Subdivision of the W. K. Wilson League in Galveston County, Texas, are you not? A. Yes.

"Q. It is true that the lot above referred to is the only property in Block 8 of the Beatty Subdivision of the W. K. Wilson League which you have ever owned or to which you have ever made any claim of ownership? A. No, there is more."

"Q. Is it true that you have never asserted any claim to, control over, or ownership of Lots 1 and 4, Block 8, aforesaid, until the last three years, after oil was discovered in Galveston County? A. No, it is not true.

"Q. You have never, have you, at any time prior to 1932, used or enjoyed Lots 1 and 4, Block 8, Beatty Subdivision of the W. K. Wilson League, or any part thereof, to the exclusion of other people in your neighborhood who ran their cattle and stock over the said lots, or any part thereof, at will? A. No, I used it myself. There is only one man who ever used that property, and it was only work horses.

"Q. It is a fact, is it not, that you employed one Dan McGrew to assist you in building or erecting the first enclosure or fence which you ever placed around Lots 1 and 4, Block 8, aforesaid? A. No, that is not true.

"Q. At the time you purchased Lot 3, Block 8, of the subdivision aforesaid, you placed a fence around the same, and this is the only fence which you have ever erected until you enclosed Lots 1 and 4 in or subsequent to the year 1932? A. No, that is not the only fence.

"Q. You have never at any time asserted any right, title, interest, claim or demand in or pertinent to Lots 1 and 4, Block 8, of the subdivision above referred to, superior or adverse to the title of the true owner thereof, whoever that might be? A. Yes, I have.

"Q. Whatever use or enjoyment you may have had of Lots 1 and 4, Block 8, of the subdivision aforesaid, has been in recognition of and subject to the right and title of the true record owner? A. No.

"Q. You have known of and have at all times recognized Laura N. Stewart as the true record owner of Lots 1 and 4, Block 8, of the aforesaid subdivision, and recognized your claim, if any, to be inferior to hers? A. No, I never have met the party. I never have recognized her as the owner of that property.

"Q. It is a fact, is it not, that between the years 1912 and 1932, the fence you erected around Lot 3, Block 8, of the subdivision aforesaid, which you purchased, was the only fence which enclosed any part of Block 8 of said Beatty subdivision? A. No, that is not so."

Mrs. Luhning testified:

"Q. Before you put the fence on Lots 1, 2 and 4 did you and your husband make any effort to ascertain who, if anyone, owned that land? A. Yes, we tried to find the owner, and couldn't.

"Q. Then you put the fences up? A. Yes sir.

"Q. What was your idea in putting them up there? What was your purpose? A. To tell the truth, we went before the commissioner, Henry Deats, and we couldn't find the owner, and Mr. Deats told my husband to go ahead and fence it and the owner would soon pop up, but the owner never has come from that day to this.

"Q. State whether or not you have been claiming that land since that time as your own, you and your husband,. A. Yes sir.

"Q. If you had found the owner at that time would you have leased it or bought it if you could? A. The first year I would, but up to 10 years I claimed it by limitation.

"Q. State whether or not you claim those Lots 1, 2 and 4, you and Mr. Luhning, as your property since the time you put that fence up. A. Yes sir."

The testimony of Luhning is to be considered in its entirety, and when so considered, we think it cannot properly be said it shows conclusively he has at all times since his original entry been holding possession in recognition of and subordinate to the real owner whoever such owner might be. The jury would have been authorized in believing that while his original entry was not hostile to the real owner, it later became so.

■ If Luhning's testimony had shown his possession during all the years had not been hostile, his situation would not be aided by the testimony of Mrs. Luhning (Madison v. Fleming [Tex.Civ.App.] 283 S.W. 589), but his testimony, considered as a whole, did not so show, and Mrs. Luhning's testimony showing a hostile intent after the first year was material in corroboration of those portions of Luhning's testimony showing hostility originating after his entry.

■ The testimony of Luhning and wife shows their original entry was amicable. This being the nature of their possession in its inception, it was incumbent upon Luhning to show by his subsequent open declarations or visible acts that his possession later became hostile. Word v. Drouthett, 44 Tex. 365; Mhoon v. Cain, supra. In determining what amounts to hostility, the relation which the possessor bears to the owner is important. 1 Am.Jur. p. 873, § 138. In the case of a permissive entry or entry by a cotenant, the entry is rightful, and no hostility is implied alone by the original entry and continued possession thereunder. But in this case the parties were strangers to one another, and the entry wrongful. The evidence shows declarations by Luhning, made more than ten years before the filing of the suit, to Miller and Smith that he owned the land. Fields testified Luhning had always referred to the land as his property. Wilkes testified Luhning offered to rent to him in 1916.

The evidence also shows open, notorious, visible, and exclusive possession and use of the land for 20 years preceding the suit.

In view of the wrongful character of the original entry by Luhning, the declarations mentioned, and the open, visible, and exclusive character of his possession and use, we are of the opinion the evidence was sufficient to charge the owner, Mrs. Stewart, with notice, more than ten years before the filing of the suit, that Luhning was holding adversely.

We have not found any case which we consider entirely analogous to the present one, but we have given this case our most careful consideration, and have reached the conclusion the evidence was sufficient to carry the case to the jury upon the issue of limitation under the ten-year statute (Vernon's Ann.Civ.St. art. 5510).

Reversed and remanded.