LAURA N. STEWART ET AL V. FRED LUHNING ET UX.

No. 7261. Decided July 19, 1939.
Rehearing overruled October 11, 1939.
(131 S. W., 2d Series, 824.)

24

*Noble Carl* and *Maco Stewart,* both of Galveston, and *R. E. Seagler* and *Felix Raymer,* both of Houston, for plaintiffs in error.

*Lewis Fisher,* of Houston, for defendants in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This is a trespass to try title case. The facts leading to the litigation are these: Block eight of the Beatty Subdivision of the Wilson League comprises four lots of approximately ten acres each. The lot in the northwest corner is numbered one; the one in the northeast corner, two; the one in the southeast corner, three; and the one in the southwest corner is numbered four. Fred Luhning and wife, defendants in error here, purchased lot three in 1909 and three years later fenced the lot and built their home upon it. The next year (1913) they fenced lot four adjoining them on the west. The following year they fenced lots one and two, and connected the fence to that surrounding three and four. When the fencing had been completed there was an outside fence enclosing all of block eight with a cross fence running east and west between lots one and two on the north and three and four on the south, and a cross fence running north and south dividing lots one and four on the west from lots two and three on the east. Subsequent to the fencing of the land and at the time of the filing of this suit by Laura N. Stewart and her mineral estate lessee, Humble Oil & Refining Company, plaintiffs in error, Luhning and his

wife have been in open, notorious, visible and exclusive possession and use of the four lots for twenty years.

Plaintiffs in error, who will be referred to as plaintiffs, filed this suit to recover lots one and four. Defendants, in addition to pleading not guilty, pleaded the ten-year statute of limitations. The parties agreed that the record title to the lots sued for was in plaintiff, Laura Stewart, and it was shown that the plaintiff oil company held a mineral lease covering the two lots. Upon conclusion of the evidence, which was heard by the jury, the court instructed the jury to return a verdict for plaintiffs. The Court of Civil Appeals reversed and remanded the cause under the view that the cause should have been submitted to the jury on the question of limitation. 103 S. W. (2d) 184. Writ of error was granted upon application of plaintiffs.

The sole question presented is whether the evidence was sufficient to take the case to the jury upon the issue referred to.

The evidence will be briefly summarized, and since the court instructed a verdict, will be stated in the light most favorable to defendants. Luhning himself testified that he had been claiming block 8 about twenty-four years; that prior to the claim of Laura Stewart as set up in the present suit no one other than himself had claimed it. Mrs. Luhning testified that she and her husband had been claiming lots one, two and four as their own since the time the fence was put up. That was after they had purchased lot three. Henry Miller, who had lived in the vicinity of the land since 1923 and had known Fred Luhning since that time, testified that Luhning told him when he "first got acquainted with him" that he owned the forty or fifty acres under the fence. Henry Wilkes testified that Luhning in 1916 offered to rent him the north part of the land for farming purposes. George Smith testified that Luhning told him fifteen years before the time he was testifying that he (Luhning) owned the land. L. S. Fields testified that Luhning since 1914 has always referred to the land as his property.

The testimony which caused the trial court to withdraw the case from consideration by the jury is an isolated statement made by Fred Luhning himself in response to a question propounded by counsel for plaintiffs while taking his oral deposition. The statement of facts discloses that after questioning of Luhning by counsel for plaintiffs had proceeded at such length as to require twenty-four pages of manuscript to report it in "Q and A" form, and after counsel had elicited from

Luhning that about twenty-four years prior to the time he was testifying he went to the courthouse to see Henry Deats, County Commissioner, to find out who owned the land and had been told by Deats to fence it and he would find out, he then propounded to Luhning the following questions and elicited the following answers:

"Q. If you had found the true owner you would have made the same arrangements you did with others (those from whom he leased adjoining land not here involved).

"A. I would have either leased or bought it.

"Q. You remained in that frame of mind until this lawsuit was filed?

"A. Yes; that makes nearly twenty-four years."

The contention of plaintiffs is that "the record is silent as to any qualification or denial" of this testimony, and that it, standing alone, should be taken as conclusive that Luhning had not claimed the land *adversely* for more than ten years when the suit was filed; and that the trial court for this reason correctly instructed a verdict against defendants. The cases of Mhoon v. Cain, 14 S. W. 24, and Thompson v. Moor (Com. App.) 14 S. W. (2d) 803, are cited in support of the contention.

In the case last cited the testimony of the adverse claimant of the land was that "I have been claiming it *ever since* I have been down there against everybody, *until such time* as they might show me they had rights or something there." (Italics ours.)

Judge Nickels in the course of the opinion stated the law with respect to the character of possession necessary to ripen title under the ten-year statute, thus:

"But peaceable possession, even when accompanied with acts whose prima facie import is that of hostility, may not, in truth, be adverse, for intent (of the possessor) may bring his acts, etc., into consonance with recognition of the privileges of true ownership. Intent, then, is a controlling factor. Purpose kept intimate (through lack of overt acts, etc.) to the possessor is, of course, nonobligatory upon the true owner, for in such event there is lack of requisite notoriety. Article 5515; * * *. But design, which does not include purposed adverse claim, manifestly, is binding upon the possessor, whether published or not. Hence evidence of declaration (prior to suit) expressing or implying amicable purpose, or evidence of acts importing such purpose, are admissible as against the possessor, and

when admitted are sufficient (at least) to raise an issue of fact, however strongly contradicted by his declarations of intent given on the trial. * * *.

"Actual knowledge of intent is confined, ex vi necessitate, to the person whose acts come under review. Of all persons, he is the only one in a position to declare the truth as a fact. In his expressions he may or may not state the truth; a possessor, e.g., may declare his entry, etc., was amicable, but it may, nevertheless, have been hostile, or he may declare a hostile intent, whereas, in fact, the intent may have been peaceable. But because of the exclusiveness of his knowledge and the lack of any reason to forget the truth, his declarations of intent (in so far as the declarations are against his interest) given upon the trial of his case ought to be regarded as conclusive upon him."

Judge Nickels accepts as true the testimony of Moor in its entirety, but concludes that as qualified and summarized by the excerpt therefrom quoted above, and considered in the light of its source, it disclosed "possession in subordination to true ownership."

In the present case the testimony of Luhning considered as a whole does not compel the conclusion that he had held possession during the twenty years he had the land under enclosure, "in subordination to true ownership," or that he was continuously in frame of mind to have leased or purchased it from the time he would have done so in 1913 to the time twenty-four years later when he made the answer in question. Stated in another way, the testimony as a whole is not conclusive that Luhning meant by the isolated portion of his testimony relied upon by plaintiffs that he would have leased or purchased the land subsequent to the time when he was in "frame of mind" to do so in 1913.

It will be borne in mind that the statement in question was made while plaintiffs were taking Luhning's oral deposition. Upon the trial in response to questions propounded by his own counsel he testified as follows concerning his early dealings concerning the land in question:

"Q. You said you went to Henry Deats to see if you could find out who owned it?

"A. That is it.

"Q. Then Mr. Stewart asked you this: 'If you had found the owner you would have made the same arrangements you did with the others?'

"A. That was back in 1913."

Luhning had said in his deposition theretofore taken that in 1913 he went to the courthouse to see County Commissioner Deats to find the owner of the land, and that if he had learned who he was he at that time "would have either leased or bought it." In response to the succeeding "frame of mind" question quoted above—whatever that may have meant to Luhning—he answered "Yes, that makes nearly 24-years." Can it be said conclusively, considering his immediately preceding answer, "That was back in 1913," that Luhning did not mean merely that if he had found who the owner was when he made the inquiry in 1913, he would then have leased or bought it, and that such was his then "frame of mind"?

While the possible meaning stated may not have been Luhning's actual meaning, can it be said conclusively it was not? The testimony as a whole, we think, is not fairly subject to conclusive interpretation; and herein lies the distinction between the present case and Thompson v. Moor, supra. Moor said he had been claiming the land against everybody "ever since I have been down there, * * * until such time as they might show me they had rights * * *." Luhning did not say, as did Moor, that "ever since" he had been in frame of mind to deal with the owner, and "until such time" as the true owner might show his right to the land, he (Luhning) would have leased or purchased it. In the light of his immediately preceding "back in 1913" answer, his testimony as a whole is. subject to the interpretation that, at that time, "nearly twenty-four years" prior to the time he was testifying, he would have leased or purchased the land from the owner if he had found him.

■ Recognizing the correctness of the law as stated by the Court in the Moor case, and assuming the correctness of the interpretation of Moor's testimony, we are unable to agree that Luhning's statement so qualified the testimony in the present case as a whole as to eliminate therefrom the factual element and conclusively establish that he had not been claiming the land adversely for ten years at the time suit was filed against him for its recovery.

In the other case relied upon by plaintiffs, Mhoon v. Cain, supra, the evidence clearly shows that the possession of the limitation claimant (Cain) was not adverse for the requisite period of ten years. The suit was filed August 6, 1887. Cain testified that he moved upon the land about a year before it was purchased by one Williams at a tax sale. The sale was made June 3, 1879. Cain testified also that he and one Stone,

to whom he sold the north half of the tract after taking a deed from the purchaser at the tax sale, made frequent inquiry for the owner *until the land was sold for taxes on June 3, 1879*, with a view to purchasing it. In other words, he did not begin to claim it adversely until after he took a deed from Williams subsequent to the tax sale on June 3, 1879. If he took the deed on the very day of the sale he would have had only nine years of adverse possession. His testimony was tied to a record date put in evidence by himself, and left no doubt as to the time he had claimed the land. The case was correctly decided, but it is obvious it is not controlling here.

■ The statement made by Luhning upon which the trial court's judgment was instructed was subject to the interpretation that his possession was in subordination to the title of the record owner, but such is not the only interpretation to which his testimnoy as a whole is subject; hence the trial court's error in rendering judgment against him. After careful consideration we are in accord with the view of the Court of Civil Appeals that the evidence was sufficient to take the case to the jury upon the issue of limitation under the ten-year statute of limitation.

Failure to discuss the opinion of the Court of Civil Appeals does not indicate a lack of agreement with its holdings, all of which are approved. This opinion is confined largely to a discussion of the isolated statement of Luhning because the notation made by us in granting the writ indicates an inclination to a tentative view that the trial court was correct in rendering a judgment predicated thereon. It is conceded by plaintiffs in their application for the writ that there was testimony raising the issue of use and enjoyment of the land for pasturage and other purposes for more than ten years prior to the filing of suit; also that there was testimony to the effect that Luhning was openly asserting a claim of ownership to the land during such time. The only matter urged as warranting an instructed verdict is plaintiff's interpretation of Luhning's statement.

The judgment of the Court of Civil Appeals reversing the trial court's judgment and remanding the case is affirmed.

Opinion adopted by the Supreme Court July 19, 1939.

Rehearing overruled October 11, 1939.