## WARREN v. HAVERKORN et al.

No. 14736.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 30, 1945.

Rehearing Denied Jan. 11, 1946.

Jack Rattikin and Hampden Spiller, both of Fort Worth, for appellant.

J. E. Winters and Clark, Craik, Burns & Weddell, all of Fort Worth, for appellees.

SPEER, Justice.

This is a trespass to try title suit brought by Mary Haverkorn, a feme sole, and her children, Gervase Haverkorn, Urban Haverkorn, Clara Mae Haverkorn, a feme sole, Joe Ann Haverkorn, a feme sole, John F. Haverkorn, and W. L. Haverkorn, against Woodrow Warren. The parties will bear the same designation here as in the trial court.

Plaintiffs' petition is in the usual form of such actions, with a paragraph added, asserting title under ten years limitations. The property involved is lots Nos. 6, 7, and 8 in block No. 15, Brentmoor Addition to the City of Fort Worth, Tarrant County, Texas. They prayed for process and title and possession of the above-described property and for general and equitable relief. Defendant pleaded the general denial and not guilty. Trial was to the court without a jury. Judgment was entered for plaintiffs and defendant has appealed.

The lots in controversy front north on Biddison Street. Lot 5, to which we shall later refer, lies immediately west and adjacent to lot No. 6.

It is apparent from the judgment entered that the court found for plaintiffs on the theory of their claim under the statutes of ten year limitations.

Defendant seeks a reversal on two points of error in which it is contended that the

evidence does not support the judgment for title by limitations. We think they are well taken and require a reversal by this court.

First point is in effect that plaintiffs' predecessor in interest (Pete Haverkorn, the deceased husband of Mary Haverkorn and the father of the other plaintiffs) entered into possession of the property in controversy with the permission of another, and that the testimony fails to show any change in this permissive holding prior to ten years before the institution of this suit.

The record does not disclose the age of any of the "children" of Pete and Mary Haverkorn, plaintiffs in this suit, except that of Clara Mae, who was 28 at the time of trial. Joe Ann and Urban Haverkorn were in California, and the other three sons were in the army. There is nothing to indicate that any was a minor and represented by next friend.

It is undisputed that in 1929 one Simms was the record owner of Lot 5, which had a house on it; that during that year Pete Haverkorn rented that house from Simms and moved with his family into it; that lots 6, 7, and 8 were fenced with chicken wire and had a garden growing on lot 6; that Simms told Haverkorn he could have the garden and use of lots 6, 7, and 8 as fenced; there is nothing to indicate who owned the three lots within the enclosure at that time; the Haverkorns then began using the three lots in connection with their rented house on lot 5 and continued such use until the institution of this suit.

Simms, the record owner of lot 5, was indebted to Tarrant County Building & Loan Association, with the debt secured by a lien on that lot, and under a foreclosure proceeding the loan company procured a sheriff's deed to lot 5 on May 3, 1932. The Haverkorns continued to rent lot 5 from the loan company.

On July 29, 1935, the loan company, under a sale contract, sold to Pete Haverkorn and wife lot 5, and the Haverkorns continued to live in the house on that lot, and also continued their use and occupancy of lots 6, 7, and 8 as they had previously done. Pete Haverkorn died March 20, 1941, and the remainder of the family continued to live in the house on lot 5, using, in the manner mentioned above, the three lots in controversy.

 Applicable to a prescriptive right by Pete Haverkorn ripening into a title by limitation, we may observe that he went into possession of the lots in 1929 by permission of Simms, even though we may assume from the record that Simms did not own the property. The universal rule is that a tenant may not make his possession adverse to his principal without repudiation of his tenancy, and such open and definite repudiation must be brought home to the knowledge of the one under whom the tenant holds. Eldridge v. Parish, 6 Tex.Civ. App. 35, 25 S.W. 49; Geries v. Magness, Tex.Civ.App., 31 S.W.2d 167; Flanagan v. Pearson, 61 Tex. 302; Hintze v. Krabbenschmidt, Tex.Civ.App., 44 S.W. 38; Emporia Lumber Co. v. Tucker, 103 Tex. 547, 131 S.W. 408; Gatlin v. Southwestern Settlement & Development Corp., Tex.Civ. App., 166 S.W.2d 150, writ refused, want of merit.

██ We can see no difference between the rights of one holding as tenant of another and one holding with the permission of another, as did Haverkorn in the instant case, unless it be that the one claiming in a way to set limitations in motion would be required to repudiate his permissive right of possession to both, the one giving permission and the real owner, and if the owner be unknown make his claim so notorious that all persons, including the owner, are charged with notice of the hostile claim. Hardcastle v. Fitzgerald, Tex.Civ.App., 27 S.W.2d 302. If there is any evidence of probative value that the one holding under such permissive right did so in such manner as to give the owner notice thereof, it raises a fact issue for the jury if one is had, or for the court sitting in lieu of a jury. Powell Lumber Co. v. Nobles, Tex. Civ.App., 44 S.W.2d 774; Stout v. Oliveira, Tex.Civ.App., 153 S.W.2d 590.

In the case before us there is no testimony that Pete Haverkorn ever at any time repudiated his right to hold the lots in controversy under permission given by Simms, nor indeed is there any testimony that he ever claimed the lots as his own at any time prior to his death in 1941. It is true that his surviving wife, Mary Haverkorn, did offer to testify that she and her husband (Pete Haverkorn) claimed the lots from the time they moved on to lot 5 (as tenants), but the court excluded that part which purported to state what the husband claimed. Art. 3716, R.C.S.

Adverse possession to ripen title by limitations "is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Art. 5515, R.C.S. We have pointed out above that

Pete Haverkorn is not shown to have ever claimed the lots in a way inconsistent with the manner in which he first took possession of them with Simms' permission.

Just here we observe that all of the plaintiffs, except Mary Haverkorn, sued for title, apparently upon the ground that their father had acquired the title as community property of himself and wife, and they were awarded title by the court; otherwise we fail to see what claim they could have had. If property is acquired by limitations running in favor of the father or mother or both, during the coverture, it becomes community. And the title becomes vested when limitation has run. Speer's Marital Rights, 457, Sec. 437, and cases cited in footnote. The father died before the expiration of ten years from the time they purchased lot 5 and ceased to be tenants of either Simms or the loan company. As before stated, unless Pete Haverkorn in some way repudiated his permissive possession and asserted an adverse ownership prior to his death, the statute did not begin to run before he died in 1941. We have seen that there was no testimony relating to a changed status or adverse claim of ownership by him; hence, there is nothing in the record to authorize a recovery of title by those plaintiffs other than the mother, since limitation did not begin to run during the lifetime of Pete Haverkorn. In any event, if Mary Haverkorn had acquired the title by limitations running after the death of her husband, it would have been her separate property and the other plaintiffs would not have had any interest in it as heirs of their father. We shall discuss the rights of Mary Haverkorn under the next point of error.

The substance of second point is that the trial court erred in admitting in evidence and giving effect to the testimony of Mary Haverkorn as to claims *she* made to the property in controversy during the lifetime of her husband. The court heard the testimony over defendant's objections but we think it had no probative value in arriving at the beginning of the limitation period under which Mrs. Haverkorn could claim the title.

As we have before pointed out, we do not believe there was any testimony tending to support the contention that the husband changed his status from that of one holding and using the property under permission of another to one of an adverse claim of ownership. Since the law vests in the husband the management and control of the community property, a claim by the wife of ownership by her alone during the husband's lifetime will not be available to her for purposes of limitation.

Mrs. Haverkorn testified (over defendant's objections) that she claimed the lots in controversy at all times since they moved on to lot 5 in 1929. So far as the record shows, her husband never asserted any adverse claim of ownership during his lifetime until he died in 1941.

In Eldridge v. Parish, 6 Tex.Civ.App. 35, 25 S.W. 49, it was held that the husband had control of all community property and that to start a period of limitation it was necessary for him to assert his adverse claim of ownership to the true owner.

Madison v. Fleming, Tex.Civ.App., 283 S.W. 589, 590, involved the point before us. There, the husband and wife occupied premises and the husband asserted no adverse claims of ownership and died four or five years before suit was instituted by the wife under a claim of title by limitation. In that case this was said: "Appellant (the surviving wife) testified that she always claimed it (the land), but her claim during her husband's lifetime would not make their possession of the land adverse, and her adverse possession after his (the husband's) death only commenced 4 or 5 years before this suit was brought." So in the instant case, the husband did not claim the lots, here in controversy, adversely to any one; he died in 1941; this suit was instituted in 1945; the wife could only legally claim limitation since the death of her husband in 1941. Therefore, much less than ten years had elapsed subsequent to the husband's death and prior to the institution of this suit. We think the testimony offered of her claims prior to her husband's death was incompetent and without probative value. A somewhat similar rule of law was announced in Luhning v. Stewart, Tex.Civ.App., 103 S.W.2d 184, affirmed by Supreme Court, Stewart v. Luhning et al., 134 Tex. 23, 131 S.W.2d 824.

Plaintiffs (appellees here) seek to sustain the judgment of the court by a third counter-point which in substance is that the trial court properly entered judgment in their favor under the doctrine of long prior possession; that plaintiffs' undisputed proof of long-time possession would support a judgment for title in them as against the defendant when the latter did not show a superior paper title in himself.

In 41 Tex.Jur. under the title of "Trespass to Try Title," Section 61, the points of law contended for by plaintiffs are discussed and many authorities cited. It is said that "The fact of possession gives rise to the presumption of ownership." Also these further deductions may be made from the rules there announced: The dispute of title between parties may be determined by possession only; that when one in possession sues another for title, although plaintiff may not prove a legal title, unless defendant shows a legal title in himself, the plaintiff must recover upon the theory of his possession. Applying the announced rule to this case, it is argued that plaintiffs should have recovered the title and possession from defendant because of plaintiffs' long possession when defendant failed to show a legal title in himself from a common source or from the sovereignty. It is further contended that if the judgment can be sustained under any theory in the case it should be upheld by this court. In support of the last-mentioned position, they cite La Force v. Bracken, Tex.Civ.App., 163 S.W.2d 239, affirmed by Supreme Court without reference to the point under discussion, in 141 Tex. 18, 169 S.W.2d 465. The contention is supported by the authority if it is applicable here. Apparently the rule is predicated upon the theory that when no findings of fact are filed then it will be presumed that the court found the facts in such way as to support the judgment. In the instant case no findings of fact were filed at the request of either party, but the judgment recites the facts found by the court upon which he based his judgment. Omitting formal parts, the judgment recites the following:

"* * * came all of the parties in person and by their attorneys and announced ready for trial, the matters of law as well as of fact being submitted to the court without the intervention of a jury, after all of the parties hereto had agreed to withdraw the case from the jury docket and waived a jury trial, and the court having heard the pleadings, evidence and arguments of counsel, is of the opinion that plaintiffs and those under whose title they hold have had peaceable, continuous and adverse possession of the lands and tenements in controversy, using and enjoying the same for more than ten years prior to the institution of this suit, and for more than ten years prior to the time that defendant acquired his unrecorded deed from B. G. Grafa, and more than ten years prior to the time B.

G. Grafa obtained his recorded deed to said lands, and that plaintiffs have title to said land under the ten years statute of limitation:

"It is therefore ordered, adjudged and decreed, etc."

Rule 306, Rules Texas Civil Procedure, provides that the judgment shall, among other things, "carefully recite the finding of the jury, or the several findings, if more than one, upon which the judgment of the court is based."

Rule 299 provides: "Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; but where one or more elements thereof have been found by the trial court, omitted unrequested elements, where supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested shall be reviewable on appeal."

It is quite apparent from the findings of fact recited in the judgment that the decree of the court is based solely upon the statute of limitation pleaded and sought to be established by plaintiffs. Under the cited rule, "The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery * * * no element of which has been found by the trial court; * * *." We can see no difference in the application of the rule to a situation where the court has filed findings of fact upon request of a party and where, as in this case, he files the necessary findings of fact in the judgment to support it. It could hardly be assumed that if he had filed fact findings upon a request that they would have been different from those he did find as contained in the judgment. It has been held that when there is a conflict between the judgment entered and the findings of fact subsequently filed the judgment will control. 3 Tex.Jur. 792, sec. 563. If the judgment as entered had been a general one and had not attempted to recite the facts found by the court, the situation might have been different.

We have concluded that this case was tried and judgment entered upon the theory of limitation alone, and the evidence does not support a judgment in favor of plain-

798

tiffs upon that theory and that the trial court did not find any element of title in plaintiffs by reason of their possessory rights.

Defendant, the appellant here, we think, properly contends that the judgment for plaintiffs upon the theory of limitations is without support in the evidence, and therefore he prays for a reversal and rendition of judgment in his favor. We decline to render such judgment for several reasons. We think the case was not fully developed with reference (a) to any right of recovery by any or all of the plaintiffs aside from Mrs. Haverkorn. The petition can only be construed to mean that they all sought a joint recovery. Such joint recovery could only be sustained either under limitation or by a possessory right; there is nothing to indicate that any of them except Clara Mae Haverkorn had any type of possession and that was obviously in conjunction with that of the mother. And (b) the judgment, with its findings of fact therein contained, clearly shows that the judgment was based upon limitation and the matter of the possessory rights by any one or all of plaintiffs is not disposed of in the judgment. Then, too, we find in the judgment this language: "It is further ordered, adjudged and decreed that defendant, Woodrow Warren, take nothing by his cross-action asserted herein, and that as to such cross-action, plaintiffs go hence without day and recover their costs." There is no "cross-action" by defendant shown in the record and in so far as the judgment attempts to adjudicate a matter that may have arisen under such plea, it is without legal effect.

For the reasons stated, our order is that the whole cause be reversed and remanded for another trial. Reversed and remanded.