**ALLEN v. SHARP.**

No. 15163.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 29, 1950.

Rehearing Denied Nov. 10, 1950.

E. S. Allen, Carl W. Goerte, and W. L. Coley, all of Fort Worth, for appellant.

Obel L. McAlister and J. R. Black, both of Fort Worth, for appellee.

SPEER, Justice.

Appellant Flora V. Allen, plaintiff below, lost her trespass to try title suit tried to the court, relying upon the ten year statute of limitation, to appellee W. A. Sharp, and this appeal followed.

The Court entered a take-nothing judgment against appellant and awarded appellee his costs. There were no facts found by the court in the judgment. No request was made for findings of fact and conclusions of law and none were filed.

Appellant relies upon nine points of assigned error. In varied forms she complains because: (1) There was a condition precedent in the quitclaim deed under which appellee claims title, which condition was never performed; (2) the testimony was insufficient to support the take-nothing judgment entered by the court and that the evidence required a judgment in appellant's favor. Other purported points of error consist of arguments and assigned reasons why appellant should have recovered.

The deceased father and mother of appellant and her six brothers and sisters owned several hundred acres of land in Tarrant County. After the death of said ancestors, the seven adult children mutually partitioned the land, executed deeds to that part awarded to and accepted by each, under date of September 3, 1924. There was a difference in the value per acre of parts of the land and some received more acres than others.

The deed from six of the heirs to appellant Flora V. Allen conveyed by field notes 144.60 acres, being parts of three surveys. The north boundary line in the description definitely dips south, west and north so as to exclude the 7.64 acres known as the J. W. Haynes survey. This small tract was patented by the State to Haynes, obviously as "scrap land" not covered by previous patents in that area. The land in controversy is very rough, filled with gullies and rocks, yet had a small quantity of surface containing grass. It has very little value. It was enclosed in the ancestors' pasture by a fence extending along the whole north line of the large tract of acreage, but was never fenced on the east, south and west sides. All of the heirs knew of these conditions when they partitioned the estate. This 7.64 acre tract is the land in controversy.

Apparently appellant does not claim that her period of limitation referable to the 7.64 acre tract began when she took possession of the part deeded to her by her brothers and sisters in the partition deed. The partition deed described the land intended to be passed thereby in specific terms of field notes which definitely excluded the 7.64 acres here in controversy. In fact she could not properly make such a claim in the absence of a showing that her possession, use and ownership was of such a character within itself as to furnish notice of an adverse claim of title to the owner. McCall v. Grogan-Cochran Lumber Co., 143 Tex. 490, 186 S.W.2d 677.

Because of differences in valuations of the parts taken by each, five of the heirs, including appellant Flora V. Allen, on September 3, 1924 (same date of the partition deeds), executed a quitclaim deed covering the 7.64 acre Haynes survey to a sister, Lizzie D. Browning and a brother, J. Clarence Allen. In the quitclaim deed we find this provision: "But it is expressly agreed and understood between the grantors and grantees herein that if the grantees desire,

or if requested by the owner or owners of the adjoining land, to fence the above described tract of land, they must fence the entire tract at their own expense."

There is no testimony in the record that the grantees in the above deed ever desired to fence the small tract conveyed to them until in 1945 and there is evidence from which the court could find expressly or impliedly that appellant, who owned the adjoining land, never requested grantees to fence the tract. Appellant argues here that the quoted provision in the quitclaim deed constituted a condition precedent to title passing to the grantees therein; that the condition was never performed and that no title passed. However, appellant does not claim title solely on this account but claims under the 10 year statute of limitation, which phase we shall presently discuss.

■ We do not believe the quoted provision in the quitclaim deed is material to this appeal. This for the reason appellant does not rely solely upon a failure to perform that condition for title. Indeed, if such title as the grantors had did not pass by the deed, it would have remained in all five of the grantors (appellant and her four brothers and sisters) and not in appellant alone, and she could not have had judgment for title against the remaining four grantors since they were not parties to this suit. It is a well recognized rule of law that if title appears to be in some person or persons other than plaintiff or defendant, the plaintiff cannot recover title in a trespass to try title suit as against any one and when plaintiff cannot recover under his pleadings and proof the defendant is entitled to judgment. But since appellant here relies in part for reversal upon the contention that the above quoted condition in the deed executed by her is and was a condition precedent, we shall overrule the contention with only a brief comment.

■■ A condition precedent in a deed or contract is one which has the effect of precluding the passing of title to grantee until the condition has been performed or fulfilled. 12 Tex.Jur., p. 126, sec. 83. The very language used in the instrument conclusively shows it was a covenant subsequently to be performed under named conditions. Appellant's own testimony shows that she so considered it to be an obligation or covenant that grantee would perform if she should later request it. Such expressed intention of the parties is often controlling in matters of this kind. Cozby v. Edwards, Tex.Civ.App., 203 S.W.2d 569, writ refused, n. r. e. Moreover, when appellant testified that she sent word to her brother (one of the grantees in her deed and sole owner at the time) to fence his land (the tract in controversy), nearly ten years after appellant and others had conveyed it to him and his sister, she tacitly admitted his ownership and the trial court impliedly found it as a fact. We see no merit in the assigned error.

Other points challenging the sufficiency of the evidence to support a judgment for appellee and that the evidence was such as to compel a judgment for, appellant, present matters which require the application of fundamental rules of practice and procedure in trespass to try title cases.

■ The testimony is undisputed that J. Clarence Allen, one of the grantees in the quitclaim deed from appellant and others, acquired the interest of his sister, the other grantee, and later conveyed the land to appellee Sharp. It is the settled law in this state that in such cases as this a plaintiff can only recover title on the strength of his own title and not because of the weakness of that of his adversary.

■ In the absence of findings of fact and conclusions of law or fact findings in the judgment upon which it is entered, in cases tried to the court, it will be presumed that the court resolved all issuable facts in such way as to support the judgment.

The testimony of both appellant and her brother, who was grantee in her deed in 1924 and the same person from whom appellee purchased in December, 1945, shows unmistakably that appellant and her brother were congenial and visited each other from time to time and both knew the little tract in controversy was enclosed with appellant's pasture lands and that she was pasturing it along with her own lands; that the brother had no objection to her doing so

since the land was of so little value. In other words, her use of the land was with at least his tacit permission.

The question of ownership or claim of ownership by appellant was never discussed between them. She testified in effect that in about 1934 after she had sent word to her brother to fence his land and he had not done so, she decided to claim the land as her own but never at any time told her brother that she had so decided to claim it.

Appellant testified that since the partition deeds between the heirs she had sold that part taken by her under the partition deed lying immediately east of and adjoining the 7.64 acre tract; that the purchaser put a fence approximately on the dividing line. (The name of such purchaser is not revealed). And at the time of trial there was a fence on or near the east line.

J. Clarence Allen, one of the grantees in the quitclaim deed, testified in substance that he purchased the interest of his sister, Mrs. Browning, the other grantee, and in December, 1945, sold the little tract to appellee; that after he sold the tract to appellee he talked with appellant about cutting down a dirt bank on the line so as to improve his fence and that she was agreeable to it. That after the sale to appellee, the witness was on the land with appellee to help him build a fence around it and appellant came down there with another brother and they said the corners may not be properly located but that she did not care to have the county surveyor to locate them; that before they built the fence appellant required them to leave. Witness further testified in effect that he had talked to appellant back in about 1933 about fencing the tract but he did not fence it. It is not disclosed what that conversation was. He further testified that no one ever told him that appellant wanted the land fenced; that when she talked to witness and appellee in 1945 she did not claim the land, nor did he ever hear from any source that she was claiming the land until this suit was filed.

█ Appellant necessarily knew, under the circumstances of this case, that her use of the 7.64 acre tract, formerly deeded by her and others to her brother and sister, was at all times with his consent and permission. It follows that before she could start a period of limitation against him or his grantee, it was necessary for her to make known to him that her possession, occupancy and use had ceased to be one of permission and had become hostile to him. Luhning v. Stewart, Tex.Civ.App., 103 S.W.2d 184, affirmed by the Supreme Court, 134 Tex. 23, 131 S.W.2d 824; Ballingall v. Brown, Tex. Civ.App., 226 S.W.2d 165, writ refused, n. r. e., and authorities there cited.

█ Without detailing the testimony before us, we think it clear that there was sufficient evidence adduced, when construed in the light most favorable to the judgment and in its support, as we must presume the court did construe it, to warrant a finding by appellant's words, act and conduct that she recognized her brother as the record owner and holder of the title up until the time he conveyed it to appellee in 1945. It has been held that a single admission of title in another during the limitation period is fatal to a claimant's title by limitation. Hatton v. Burgess, Tex.Civ.App., 167 S.W. 2d 260, writ refused, w. m.; Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81.

█ Referable to certain testimony of appellant to the effect that in about 1933 or 1934 when her brother had failed to fence the land, she decided that he did not want it and for that reason she decided it was hers and she would claim it but she did not so advise him or anybody else, the court impliedly found that such secret intention by appellant not communicated to any one by word or overt act would not start a period of limitation which would ripen into title. This has been held not to begin the statutes of limitation. St. John's Regular Baptist Association v. Long, Tex.Civ.App., 211 S. W.2d 607, writ refused, n. r. e.

After a careful study of this record we have concluded that under applicable rules of law, practice and procedure in such cases, there was ample evidence to support the judgment. All points of error are overruled and the judgment is affirmed.