Edward L. COLLINS et al., Appellants,

v.

John IVEY et al., Appellees.

No. 6452.

Court of Civil Appeals of Texas,
El Paso.

Nov. 5, 1975.

Rehearing Denied Dec. 31, 1975.

Peticolas, Luscombe, Stephens & Windle,
W. C. Peticolas, El Paso, for appellant.

Santiesteban, Kennedy & Martin, Robert E. Kennedy, Marshall I. Yaker, El Paso, for appellee.

## OPINION

PRESLAR, Chief Justice.

This is a statutory trespass to try title suit brought by Appellants against the defendants-Appellees for title and possession of 102.06 acres of land out of Tract 9–A, Block 11, Lower Valley Surveys, El Paso County, Texas. A jury found for the defendants on their plea of the ten year Statute of Limitations and judgment was entered awarding them title and possession of the land. That judgment is affirmed.

Questions on appeal are the sufficiency of the evidence to support the jury finding of adverse possession where (1) there is evidence that defendants' predecessor in title went into possession with consent of an owner, and (2) there is evidence that one of the defendants undertook to purchase the property during the adverse period of possession; and, the failure to comply with Article 3726, Tex.Rev.Civ.Stat.Ann., in presenting documentary evidence is an issue.

■ The land involved is a 102 acre tract which is a portion of a 334 acre tract to which the Appellants claim record title in various undivided interests. The period of time in which the Appellees claim adverse possession is from 1938 until January of 1973 when suit was filed. Under Article 5510, Tex.Rev.Civ.Stat.Ann., and related Articles, adverse possession during any ten year period would mature title in the defendants-Appellees; the jury found that the defendants held such peaceful and adverse possession for a continuous period of ten years prior to 1973. Such finding is amply supported by the evidence; for the evidence is that K. B. Ivey entered into possession in 1938 and fenced it, and the fences have been maintained until time of suit in 1973; continuous use was made of the property from 1938 to 1973 and during such time improvements were added; a portion was leveled for farming and K. B. Ivey grazed cattle on the land; from 1946 to 1954, John Ivey leased the land from K. B. Ivey, used five acres for cultivation, and in 1948 an airstrip was added, and in 1949 another airstrip was added with a windsock and tiedown pads for planes; the airstrip was heavily used by cropdusters in the area who got permission from the Iveys to use it, and it became known as "the Ivey strip." A baseball diamond was constructed and used; a series of dams were built to protect the cultivated area from washing; in 1952, some 1500 tons of hay were stored on the property, and in 1956, a 45 x 50 ′ metal hangar building was constructed and was later converted to a barn; in 1958, a water well was drilled and a pump house was built for it; electric lines were run to it; farm machinery was stored on the land; posted signs were put up and trespassers ejected. In 1958 or 1959, Charlie Ivey leased it from K. B. and used it until suit was filed in 1973; the water well was maintained until 1969 when water was piped to the property. Many livestock were kept on the property including some 300 head of cattle in 1959, 600 head of sheep in 1960, and since 1960, cattle were continuously kept. Cattle pens were constructed for 400 head with chutes and scales; an automatic mercury light was installed on the premises; and a silage pit and grain storage tank were constructed.

In 1970, K. B. Ivey conveyed the premises to the six Ivey brothers, and at time of trial, title was claimed by Charlie Ivey, he having acquired the interest of the other brothers. Appellants do not question the sufficiency of this evidence to sustain the finding of adverse possession in the ordinary sense, but they urge that this is a case where the original entry was with permission and there has been no repudiation of that permission. They urge the rule of law that a possessor whose original entry was amicable has a burden to show by subsequent open declarations or visible acts that his possession later became hostile and made known to the owner who permitted

the entry. *Luhning v. Stewart,* 103 S.W.2d 184 (Tex.Civ.App.—El Paso 1937), aff'd 134 Tex. 23, 131 S.W.2d 824 (1939); *Hinds v. Killough,* 332 S.W.2d 101 (Tex.Civ.App.— Amarillo 1959), rev'd on other grounds, 161 Tex. 178, 338 S.W.2d 707 (1960).

■ The evidence will not support the contention that this case comes within the rule announced above. The evidence is that in 1938 K. B. Ivey approached a Mr. W. D. Malone, whom he believed to be the owner of the land in question, and asked him about acquiring some of that land, and Mr. Malone told him to fence what portion of the property he wanted and he did so, fencing the land here in question. Malone did not at that time own any interest in the property. Some four years later, 1942, he acquired a one-half undivided interest in the property; and not long thereafter he died, and his widow and his administrator sold that interest in 1944. Thus the 1938 entry was not with permission of the owners, it was hostile to them, even as the continued possession was hostile to them during the years that followed. At best, this evidence simply shows that the Ivey possession was not hostile to Malone during the two years that he owned the property. It was, however, hostile and adverse to the new owners of his interest after 1944. The facts do not bring this case within the permissive entry rule.

■ Appellants contend there has been a recognition of their title by Appellees during the period of adverse possession. They base this contention on testimony that Ben Ivey inquired of the attorney who represented the interest owners about acquiring an undivided one-half interest. This occurred in 1963. It is very questionable whether this was an offer to purchase sufficient to show a recognition of title. But that is immaterial because Ben Ivey was not one of those who held adversely in 1963 or otherwise during the period of time when title was maturing by limitations. From 1938 until 1970, K. B. Ivey was either in actual possession or leasing to sons John,

Jimmy or Charlie. Ben was not an adverse possessor; he did not enter the picture until K. B. deeded the land to him and his brothers in 1970. Also, there is evidence by which the jury could have found that title was perfected by adverse possession in a ten year period before 1963.

■ If limitation title did mature prior to 1963, no recognition or acknowledgment later on by Ben Ivey of Appellants' title would destroy the limitation title which had previously matured. *Harris v. Mayfield,* 260 S.W. 835 (Tex.Comm'n App.1924); *Hurr v. Hildebrand,* 388 S.W.2d 284 (Tex.Civ.App. —Houston 1965, writ ref'd n. r. e.).

Appellants' Points of Error one and two are overruled under the above discussion that upholds the trial Court judgment awarding title to the Appellees, and we do not reach the questions presented in Points three and four regarding the value of the improvements.

■ Appellees assert a counterpoint to the effect that the trial Court erred in admitting certain deeds into evidence because of plaintiffs' failure to comply with Article 3726, or prove execution and delivery of the deeds. Plaintiffs introduced numerous deeds to which there was objection by the Appellees-defendants that they were not originals and their execution was not proved; and in lieu of such proof, there had been no compliance with Article 3726, Tex. Rev.Civ.Stat.Ann. Under that Statute, instruments which have been on file for ten years may be admitted in evidence without proof of their execution if a prescribed procedure is followed as to filing and notice to the opposite party; there is a further provision that where the land is located in the county of suit, as here, recorded instruments may be put in evidence by reading directly from the county clerk's records, if a prescribed procedure is followed. The correct procedure under either of these provisions was not followed in this case. Because Appellants did not comply with Article 3726, it was error for the Court to admit the instruments in question. *Hinton v.*

*Uvalde Paving Co.,* 77 S.W.2d 733 (Tex.Civ. App.—Dallas 1934, writ ref'd); *Johnson v. Stickney,* 152 S.W.2d 921 (Tex.Civ.App.— San Antonio 1941, no writ); *Watson v. Toler,* 153 S.W.2d 506 (Tex.Civ.App.—Galveston 1941, no writ); *Mata v. Rangel,* 432 S.W.2d 146 (Tex.Civ.App.—Houston (1st Dist.) 1968, writ ref'd n. r. e.). Since Appellants were plaintiffs, they had the burden of proving their chain of title from the sovereign of the soil. It follows that the admission of these deeds was more than harmless error, for without them, they failed to establish title. The counterpoint is sustained.

The judgment of the trial Court is affirmed.