J. H. (Dick) CALFEE, Petitioner,

v.

D. G. DUKE et al., Respondents.

No. B-5897.

Supreme Court of Texas.

Nov. 24, 1976.

Rehearing Denied Dec. 22, 1976.

Darden, Fowler & Creighton, William E. Fowler, Conroe, Kronzer, Abraham and Watkins, W. James Kronzer, Jr., Houston, for petitioner.

John W. Overton, Houston, Rex G. Fortenberry, Beaumont, for respondents.

REAVLEY, Justice.

The only remaining issue in this trespass to try title suit is whether the evidence raises a fact issue of the possessor's claim of right to mature his limitation title under the ten year statute. The trial court after a non-jury trial rendered judgment in favor of the adverse possessor, J. H. (Dick) Calfee. The Court of Civil Appeals held that, by his own testimony, Calfee conclusively established that his claim to the disputed land was not "adverse" under the ten year statute; the trial court's judgment was therefore reversed and rendition of judg-

ment was ordered in favor of 21 parties in accordance with their respective interests as heirs of J. H. Duke. 533 S.W.2d 839. We will affirm the judgment of the trial court.

The land in dispute consists of 24.744 acres which is fenced together with 223.8 acres known as the "Moorefield homestead." Calfee acquired a deed in 1946 which describes the conveyed land as "embracing what has for many years been known as the Moorefield Homestead," and further sets forth a full metes and bounds description. This same description has been used in a chain of deeds which are contained in this record and go back as far as 1894. That chain includes conveyances, prior to 1920, to and from Calfee's parents. We do not know how the disputed 24 acres came to be included under the same fence with the Moorefield homestead land. The record does not show a chain of title for the disputed land. There is no evidence whatsoever on the ground of any fence or other boundary sign along the east margin of the Moorefield homestead, as measured by the metes and bounds distances, and the west margin of the 24 acres.

The Duke heirs introduced into the record a 1935 judgment which terminated a lawsuit of very many parties affecting a very large amount of land. That judgment purported to award title to the 24 acres of land of the present dispute to the heirs of J. H. Duke and to Calfee's mother and father, both of the parents having been parties to the suit and having disclaimed all interest in the land by proper instrument executed and filed therein. Calfee's mother was a daughter of J. H. Duke. Whatever interest she may have had in the land passed by her will to Calfee's father when she died in 1949; and the father's interest, if any, then passed by his will to Calfee after the death of the father in late 1956. A chain of deeds has been introduced in the present record affecting the Moorefield homestead land, but we perceive no connection between the sovereignty of the soil and any party to the 1935 litigation—either for the 223 acres of the Moorefield homestead or the 24 acres

now disputed. For present purposes, however, we will assume that the 1935 judgment is proof of common source of title between the parties to the present litigation, and we will further assume that Calfee's right to prevail in this case depends upon his proof of limitation title.

The Duke heirs have not contended that Calfee's use and occupancy of the land failed to satisfy limitation requirements. Their contention in the Court of Civil Appeals was that Calfee became a cotenant with the other Duke heirs upon his father's death and that Calfee failed to bring home to these cotenants notice of his repudiation of their title. We do not reach that contention if Calfee entered into possession of the land in July of 1946 for himself and without a cotenancy relation to anyone. An inheritance after that date would not of itself create the relationship which would require an express repudiation by him. See *Meaders v. Moore*, 134 Tex. 127, 132 S.W.2d 256 (1939); *Condra v. Grogan Mfg. Co.*, 149 Tex. 380, 233 S.W.2d 565 (1950); *Bruni v. Vidaurri*, 140 Tex. 138, 166 S.W.2d 81 (1942). Furthermore, the full ten year limitation period passed prior to the death of Calfee's father.

The Court of Civil Appeals held that the adverse possession of Calfee could not have begun prior to the death of his father because of Calfee's testimony at the trial that he did not claim the land in question against his mother and father while they were living. That conclusion must be based upon the following exchange at the close of the cross-examination of Calfee:

Q Did you start adversely claiming it against your father and mother?

A I didn't start claiming it against nobody, but he—

Q When did you start claiming it against anybody?

A When I bought it.

Q When your father and mother were living, were you claiming it against them?

A No, sir. I wasn't claiming it against nobody. I bought what I understood was that place, and it was fenced, and

that's the way people have been using it, and that's what I bought.

It was Calfee's testimony that there was no difference between his use or claim of the disputed acreage during the years before the death of his father and in the years thereafter. He commenced "claiming it as his own" at the time he made his purchase in 1946 because he believed at all times that his deed included all of the land under fence. He thought he "owned" all of the fenced enclosure after taking the 1946 deed. What, then, is the effect of his testimony set forth above that he was not claiming against his mother and father?

■ To satisfy the limitation statutes, "adverse possession" must be not only "an actual and visible appropriation of the land" but it also must be "commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Art. 5515, Vernon's Ann.Civ.St. No matter what the use and occupancy of the land may be, the possessor must intend to appropriate it. *Wright v. Vernon Compress Co.,* 156 Tex. 474, 296 S.W.2d 517 (1956). If by mental reservation the possessor intends to hold the land only until or unless the true owner appears, his claim of right does not satisfy this requirement. *Word v. Drouthett,* 44 Tex. 365 (1875); *Thompson v. Moor,* 14 S.W.2d 803 (Tex.Com.App.1929); *Orlando v. Moore,* 274 S.W.2d 86 (Tex.Civ.App. 1954, writ ref'd n. r. e.).

In many cases the statements of the adverse claimant appear to be, or may in fact be, inconsistent. It is usually held that a fact issue is thereby presented on the question of his intent to claim the land. In *Pearson v. Doherty,* 143 Tex. 64, 183 S.W.2d 453 (1944), the possessor testified in his deposition that he was not trying to take the land away from those who owned it, but at the trial he said that he had always claimed it for himself. In *Stewart v. Luhning,* 134 Tex. 23, 131 S.W.2d 824 (1939), the possessor testified that he would have either leased or bought the land if the true owner had been found at the time when his possession began, but his other testimony was held not to show conclusively that this was his state of mind during the subsequent possession of the land. In *Payne v. Priddy,* 371 S.W.2d 783 (Tex.Civ.App.1963, no writ), the possessor testified that he would not have asserted claim to any land that did not rightfully belong to him, but during the limitation period he did in fact claim all of the land under his fence and he had no knowledge that his fence was not located at the boundary set by his deed.

■ Since the trial court has resolved all fact issues in favor of Calfee, it would not matter at this point whether or not his testimony was inconsistent. It does seem clear that what he was saying at all times was that for over 20 years he never thought of himself as claiming adversely to anyone for the simple reason that he thought that he was the rightful owner and had no competition for that ownership. He testified as follows:

Q  Mr. Calfee, when you bought from Watson and Paddock, did you claim everything that was under fence?

A  That's right.

Q  And was this twenty-seven acres that you now understand to be in dispute, was that within your fence?

A  That was in the fence.

Q  And you claimed everything inside the fence?

A  That's right.

Q  From the date you bought it?

A  That's right.

That being his claim of right, and it being coupled with his actual and visible possession and use, the adverse claim and possession satisfy the statutory requirements and cannot be defeated by Calfee's lack of knowledge of the deficiency of his record title or by the absence of a realization that there could be other claimants for the land. *Butler v. Hanson,* 455 S.W.2d 942 (Tex. 1970); *Bruce v. Washington,* 80 Tex. 368, 15 S.W. 1104 (1891); *Goslin v. Beazley,* 339 S.W.2d 689 (Tex.Civ.App.1960, writ ref'd n. r. e.); *Yates v. Hogstrom,* 444 S.W.2d 851 (Tex.Civ.App.1969, no writ); 7 Powell, The Law of Real Property § 1015; Anno.: Adverse Possession—Mistake in Boundary, 97 A.L.R. 14, 36 (1935).

The judgment of the Court of Civil Appeals is reversed; the judgment of the trial court is here affirmed.