

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00208-CV

_____

KEVIN SCRIBNER, Appellant

V.

RANDAL WINEINGER, INDIVIDUALLY AND D/B/A AKINS OIL COMPANY
AND PARRA OIL AND GAS, INC., Appellees

---

On Appeal from the 97th District Court
Archer County, Texas
Trial Court No. 2018-0094A-CV

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. INTRODUCTION

This case concerns adverse possession of an oil-and-gas leasehold interest. In a single issue, Appellant Kevin Scribner challenges the trial court's order and final judgment granting summary judgment in favor of Appellees Randal Wineinger, Individually and d/b/a Akins Oil Company, and Parra Oil and Gas, Inc. on their affirmative defense of adverse possession and Parra's claim of limitations title (under the five-year statute). The trial court ordered that Scribner take nothing on his claims for trespass to try title, conversion, and trespass and declared that Parra was the owner of the oil-and-gas leasehold interest.

Scribner does not dispute that the summary-judgment record establishes that Appellees' predecessors in title obtained adverse title to the leasehold interest before the conveyance of that interest to Appellees. Scribner contends that Appellees acknowledged his title in the lease at least three times when they sought an assignment of that interest and that the acknowledgements precluded any limitation title running in their favor. But even assuming that the acknowledgments occurred, they came too late to benefit Scribner because all the acts necessary for Appellees' predecessors to obtain adverse title and to divest Scribner of any claim to the lease occurred before the claimed acknowledgments. The acknowledgments did not stop the clock on the adverse claim because the clock had already run out before they occurred.

Scribner also contends that Appellees' acknowledgements of his title raised a fact issue on whether Appellees' possession was adverse. An acknowledgement of title after the statutory bar may constitute evidence showing that an adverse claimant's possession was not adverse during the limitations period because the possessor must intend to appropriate the property. But that principle does not apply here because Appellees did not possess the leasehold interest during the limitations period. Accordingly, we affirm.

## II.    BACKGROUND

### A.    The parties proffer alternative contentions regarding ownership of the leasehold interest.[1]

In 1999, Scribner's father acquired an oil-and-gas leasehold interest arising by virtue of an oil-and-gas lease recorded in Archer County, Texas. The record reflects that Scribner's father conveyed all the working interest in the lease to him by virtue of a May 30, 2002 Assignment and Bill of Sale (2002 Assignment) filed of record in Archer County. Scribner contends that he did not know about the 2002 Assignment until 2016. He alleged that he had never transferred the working interest to any other person or entity and that he remains the owner.

---

[1]We draw these allegations and facts from the parties' live pleadings and the summary-judgment evidence. We refer to allegations in the pleadings only to more clearly outline the context for this dispute; we do not consider them evidence supporting summary judgment. *See Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995).

3

Wineinger contends that he previously held and Parra contends that it currently holds superior title to the leasehold interest because their predecessors acquired title through adverse possession under the five-year statute.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.025. The summary-judgment evidence shows that on March 29, 2010, Louise Daniel, acting under the will of Scribner's father (then deceased), assigned the working interest and lease to Latigo Drilling, LLC (2010 Assignment). Appellees allege that although Scribner was present when Daniel executed and delivered the assignment of the lease to Latigo, Scribner did not assert any ownership to the lease at that time.

The record reflects that a series of individuals and entities owned and assigned the leasehold interest following the 2010 Assignment:

- On October 8, 2010, Latigo assigned the working interest to Hanaco LLC.

- On September 10, 2012, Hanaco assigned one-third of the working interest to Duncan Oil Company, assigned one-third of the working interest to Gary Grace d/b/a Grace Services, and retained one-third of the working interest for itself.

- On May 15, 2014, Grace assigned its one-third of the working interest to A&G Operating, LLC.

- On June 13, 2016, Hanaco, Duncan, and A&G assigned 100% of the working interest to Wineinger and David Park, in their individual capacities.

---

[2]Wineinger does not assert current ownership of the leasehold interest because he had assigned his interest to Parra prior to Scribner filing suit, as discussed below.

4

- On October 1, 2016, Wineinger and Park assigned the working interest to Parra, a company in which they both own an interest.

These assignments were recorded in Archer County.

According to Appellees, Parra and each of its predecessors exclusively operated the lease, received all revenue (less royalty) from the lease, and paid all taxes attributable to the lease. They assert that Scribner, on the other hand, did not participate in the operations of the lease; did not make any expenditures for the lease; did not receive any revenue from the lease; and did not pay any taxes attributable to the lease.

In June 2018, Scribner filed suit against Appellees asserting claims for trespass to try title, trespass to real property, and conversion. Scribner sought a determination that he holds superior title to the working interest, an accounting, and an award of damages. Appellees answered, asserting the affirmative defense of perfection of title by adverse possession under the five-year statute of limitations, citing section 16.025 of the Texas Civil Practice and Remedies Code (five-year statute). Parra also counterclaimed for trespass to try title, declaratory judgment, and suit to quiet title, seeking a declaration that it has a superior title by limitations.[3]

---

[3]Appellees asserted other affirmative defenses, including limitations under the three- and ten-year statutes of limitations under chapter 16 of the Texas Civil Practice and Remedies Code, and Parra asserted counterclaims in addition to those listed above. Those defenses and counterclaims are not relevant to the disposition of this appeal, and the trial court's judgment provides that "[t]his Judgment disposes of all parties and claims and is final and appealable." This language unmistakably indicates

5

**B.** **Appellees moved for summary judgment on Scribner's claims and Parra's counterclaims, arguing that their predecessors acquired limitation title by adverse possession under the five-year statute.**

Appellees moved for traditional summary judgment, arguing that Scribner's claims were precluded by their predecessors' adverse possession and that Parra was the rightful, current owner of the leasehold interest. Appellees argued that the summary-judgment evidence satisfied each element of the five-year statute and that after tacking or stringing together all periods of possession of their predecessors since April 2010 (when Latigo began operating the lease), they had adversely possessed the lease by April 2015, and Scribner's claimed ownership in and right to possess the property had terminated in April 2015.

Appellees requested that the trial court enter a judgment that Scribner take nothing on his trespass-to-try-title claim, arguing the evidence established the affirmative defense of limitations under the five-year statute as a matter of law. They also requested that the trial court enter a judgment that Scribner take nothing on his trespass and conversion claims, arguing that the evidence established that they had adversely possessed the lease in April 2015 under the five-year statute, thereby dispensing with the essential elements of these claims relating to Scribner's ownership or rights to possession. Parra also requested summary judgment on its counterclaims for trespass to try title, declaratory judgment, and suit to quiet title, arguing that the

that the summary judgment was final. *See In re Daredia*, 317 S.W.3d 247, 248 (Tex. 2010) (orig. proceeding).

evidence established all elements to each counterclaim based on the evidence establishing title through adverse possession under the five-year statute.

**C. Scribner opposed summary judgment by arguing that Appellees acknowledged his title to the lease, precluding limitations from running in Appellees' favor and evidencing that their possession at any time was not adverse.**

In response to Appellees' motion, Scribner argued that there was "a genuine issue of material fact as to who owns the working interest" that precluded summary judgment. Scribner cited *Tex-Wis Co. v. Johnson*, 525 S.W.2d 232 (Tex. App.—Waco 1975), *aff'd on other grounds*, 534 S.W.2d 895 (Tex. 1976), for the proposition that a defendant's offer to buy land constitutes an acknowledgment in title in the plaintiff that precludes limitations from running in favor of the defendant and is evidence tending to show that any possession by the defendant is not adverse to the plaintiff. Scribner argued that Appellees acknowledged title in him when they contacted him at least three times to request that he execute a proposed assignment of his interests.

First, Billy Elder is an attorney who represented Parra in June 2016 in connection with Parra's acquisition of leasehold interests in several leases situated in Archer County, including the lease at issue. In connection with that work, Elder discovered the 2002 Assignment in the Archer County records.[4]

---

[4]Elder submitted an affidavit attesting to these facts.

On June 10, 2016, Elder sent Scribner an email, which provided,

Thank you for visiting with me. Attached is the assignment from [your father] to you, back in 2002. I could not find any assignment back into [your father] that was filed with the County Clerk. The assignment to Latigo Drilling was from Louise Daniel u/w/o [your father], instead of you. I have attached a copy of the assignment to Latigo as well, so you can see the problem. What I would like to do to clear this up is to do an assignment from you into the current owners, Hanaco, LLC, A&G Operating, LLC and Robert Duncan d/b/a Duncan Oil Company, so we can clear up this break in the change.[5] Let me know if this is acceptable and I will prepare it for your signature.

That same day, Elder sent Scribner a draft of the proposed assignment of Scribner's working interest to Hanaco, Duncan, and A&G.[6] Elder copied Park on at least one of his June 10, 2016 emails to Scribner.[7]

Second, on June 13, 2016, Park forwarded Elder's June 10, 2016 email with the draft assignment attached to Scribner's wife asking, "Can you have Kevin sign,

[5]The original text says "change"; Scribner contends this was a typo and should state "chain." This issue is not relevant to the disposition of the appeal.

[6]After referencing the 2010 Assignment, the proposed assignment provided that the working interests in the lease "are now purported to be owned" by Hanaco, A&G, and Duncan and that "a question has arisen as to a possible break in the chain of title, due to an Assignment and Bill of Sale from [Scribner's father] to Kevin Scribner, dated May 30, 2002, said assignment being recorded at Volume 616, Page 649 of the Official Public Records of Archer County, Texas." The proposed assignment further provided, "Kevin Scribner desires to correct the chain of title and assign all of his right, title, and interest in the above described lease to the now purported owners . . . ." In a sworn declaration, Scribner authenticated Elder's first June 10, 2016 email and the draft assignment.

[7]As noted above, Park is an owner of Parra.

8

notarize and return to me? Thanks for your help."[8] Park and Scribner's wife worked together at First Bank.[9]

Third, according to Scribner's declaration, in July 2016, he received another email from Elder inquiring about the status of the proposed assignment. This email is not in the summary-judgment record.[10]

Attributing the above actions to Appellees, Scribner argued that Appellees' contacts regarding execution of the proposed assignment were analogous to the offer to purchase real property in *Tex-Wis Co.* He argued that the contacts constituted an acknowledgement of title in Scribner that precluded any limitations from running in Appellees' favor as a matter of law and was evidence tending to show that any possession by Appellees was not adverse to Scribner.

The trial court granted Appellees' motion and entered a final judgment that Scribner take nothing on all of his claims; awarded Parra title to a 100% working

---

[8]That same day, Hanaco, Duncan, and Grace executed an assignment of the working interest to Wineinger and Park.

[9]In a sworn declaration, Scribner's wife testified to these facts and authenticated Park's June 13, 2016 email, which forwarded Elder's second June 10, 2016 email to Scribner.

[10]In Elder's affidavit, he averred that he called Scribner in July 2016 asking him about the assignment. In Scribner's declaration, he denied this conversation took place. This dispute is not material to the disposition of this appeal. *See* Tex. R. Civ. P. 166a(c).

interest in the lease; declared Parra to be the sole owner of the working interest; and declared the 2002 Assignment null, void, and of no effect. Scribner timely appealed.

## III.   STANDARD OF REVIEW

We review a summary judgment de novo. *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018). Summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

Here, we deal with the affirmative defense of limitations title, and a defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant must present summary-judgment evidence establishing each element of the affirmative defense as a matter of law. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). This standard governs the trial court's ruling that Scribner take nothing on his trespass-to-try-title claim.

10

Additionally, a defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank*, 315 S.W.3d at 508; *see* Tex. R. Civ. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999). This standard is the basis for the trial court's ruling that Scribner take nothing on his trespass and conversion claims.

Finally, a claimant is also entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). This standard is the basis for the trial courts' ruling in favor of Parra on its counterclaims.

Although each of the above standards applies to this case, all questions we resolve in this appeal rely upon our analysis of the evidence regarding Appellees' affirmative defense of adverse title by limitations under the five-year statute.

## IV.   APPLICABLE LAW

"'A mineral estate, even when severed from the surface estate, may be adversely possessed under the various statutes of limitations,' so long as the statutory requirements are met." *BP Am. Oil Prod. Co. v. Marshall*, 342 S.W.3d 59, 69 (Tex. 2011) (quoting *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192–93 (Tex. 2003)). The five-year statute provides,

11

(a) A person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who:

(1) cultivates, uses, or enjoys the property;

(2) pays applicable taxes on the property; and

(3) claims the property under a duly registered deed.

Tex. Civ. Prac. & Rem. Code Ann. § 16.025(a). If an action for the recovery of real property is barred by the five-year statute, then "the person who holds the property in peaceable and adverse possession has full title, precluding all claims." *Id.* § 16.030(a). An adverse possession claimant may "tack" or string together and aggregate prior periods of possession by the claimant's predecessors to satisfy the limitations period as long as there is privity of estate between each holder and its successor. *See id.* § 16.023.[11]

Pertinent to this appeal, section 16.021 of the Texas Civil Practice and Remedies Code defines "adverse possession" to mean "an actual and visible appropriation of real property, commenced and continued under a claim of right that

---

[11]Here, Scribner does not challenge whether Appellees' summary-judgment evidence established the elements of the five-year statute, except the requirement that the possession be adverse to Scribner, which we address below. Production of oil and gas constitutes a use of the mineral estate that is an adverse use, as discussed below. And the summary-judgment record establishes a use for the requisite period of time. That record also establishes—and Scribner does not contend otherwise—that Parra's predecessors held title under documents that qualify as duly registered deeds. Finally, the summary-judgment record establishes that Parra's predecessors in title paid the taxes attributable to the mineral estate.

is inconsistent with and is hostile to the claim of another person." *Id.* § 16.021(1). "The 'possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *BP Am. Oil Prod. Co.*, 342 S.W.3d at 70 (citing *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990), and *McDonnold v. Weinacht*, 465 S.W.2d 136, 141 (Tex. 1971)). "[I]n order to mature title by limitations to a mineral estate, actual possession of the minerals must occur." *Nat. Gas Pipeline Co.*, 124 S.W.3d at 193 (citations omitted). In the context of a mineral interest, actual possession occurs through production of oil and gas, and with respect to the mineral estate, the supreme court provides the following description of the process of how actual possession occurs:

> A mineral estate, even when severed from the surface estate, may be adversely possessed under the various statutes of limitations. Once severance occurs, possession of the surface alone will not constitute adverse possession of minerals. Generally, courts across the country including Texas courts have said that in order to mature title by limitations to a mineral estate, actual possession of the minerals must occur. In the case of oil and gas, that means drilling and production of oil or gas.

*Id.* at 192–93 (citations and footnotes omitted). With uncontroverted proof of such actual possession, adverse title may be conclusively established and warrant a determination that adverse title exists as a matter of law. *Id.* at 201.

But "[n]o matter what the use and occupancy of the land may be, the possessor must intend to appropriate it." *Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex. 1976) (citation omitted). "If by mental reservation the possessor intends to hold the land

13

only until or unless the true owner appears, his claim of right does not satisfy this requirement." *Id.* (citations omitted). "In many cases the statements of the adverse claimant appear to be, or may in fact be, inconsistent. It is usually held that a fact issue is thereby presented on the question of his intent to claim the land." *Id.* (citation omitted).

A "possessor's acknowledgement of title in another when made *before* the completion of the bar will defeat limitation." *Bruni v. Vidaurri*, 166 S.W.2d 81, 88 (Tex. 1942) (emphasis added) (citations omitted); *see also Brown v. Snider Indus., LLP*, 528 S.W.3d 620, 629 (Tex. App.—Texarkana 2017, pet. denied) ("If, prior to the completion of the limitations period, an adverse possessor acknowledges that another has superior title to the property he is possessing, it will defeat limitations as to that possessor." (citations omitted)). An acknowledgment of title may occur, for example, if a possessor's offer to purchase the property from the record owner involves an admission of title. *Brown*, 528 S.W.2d at 629 (citations omitted); *see also Bruni*, 166 S.W.2d at 88 (explaining that it is usually a fact question on whether a person's offer to purchase property is a recognition of superior title or is an effort to buy peace and protect oneself from adverse litigation).

A possessor's acknowledgement of title in another *after* the limitation title has been completed, however, does not destroy the limitation title. *Bruni*, 166 S.W.2d at 88. As the Texas Supreme Court has stated,

> A limitation title once consummated, is as full and absolute as any other perfect title, and is not lost by a subsequent oral statement by the limitation owner that he never intended to claim by limitations. . . . A written acknowledgement of tenancy by one who perfected title is also ineffective to divest a limitation title.

*Republic Nat'l Bank of Dall. v. Stetson*, 390 S.W.2d 257, 260 (Tex. 1965) (citations omitted); *see also Butler v. Hanson*, 455 S.W.2d 942, 946 (Tex. 1970) (same); *Harris v. Mayfield*, 260 S.W. 835, 838 (Tex. [Comm'n Op.] 1924) (holding that once limitation title accrues, a later gratuitous acknowledgement that the title never existed cannot defeat the acquired title); *Hurr v. Hildebrand*, 388 S.W.2d 284, 291 (Tex. App.—Houston 1965, writ ref'd n.r.e.) ("[A] title acquired by limitation can no more be abandoned by moving away or orally conveyed or divested by other conduct, or orally relinquished than a record title."). But a possessor's acknowledgement of title in another after the limitation period may tend to show that the possession was not adverse. *See Bruni*, 166 S.W.2d at 88; *see also Butler*, 455 S.W.2d at 946 (stating that it was for the jury to determine whether a possessor claimed land as his own under a claim of right during the limitations period when, after the limitation period, he executed an affidavit disclaiming interest in the property).

# V. THE TRIAL COURT DID NOT ERR BY GRANTING SUMMARY JUDGMENT BECAUSE ANY ACKNOWLEDGMENT OF TITLE BY APPELLEES OCCURRED AFTER APPELLEES' PREDECESSORS OBTAINED ADVERSE TITLE.

The sole issue on appeal as phrased by Scribner is whether the trial court erred by granting summary judgment in favor of Appellees[12] under the five-year statute because Appellees acknowledged title in Scribner.[13] This issue requires us to address two questions. First, did the summary-judgment evidence regarding acknowledgments of title in Scribner preclude limitations from running in favor of Appellees? Second, did the summary-judgment evidence regarding acknowledgements of title in Scribner raise a genuine issue of material fact on whether Appellees' possession was adverse to Scribner? We resolve both questions against Scribner.

---

[12]Scribner's briefing in the trial court and on appeal is often unclear about which party he intends to reference (or if he is referencing both) when he refers to "Appellee" or "defendant" in the singular. Construing the briefing liberally, we read his briefing as referring to both Appellees as necessary. *See* Tex. R. App. P. 38.1.

[13]Scribner argued in the trial court and on appeal that he did not know that his father had assigned the lease to him until June 10, 2016, when he was contacted by Elder. Scribner does not assign any error to the trial court's order based on this argument. Even if we construe Scribner's briefing in the trial court and on appeal liberally to include a tolling argument, we conclude that such argument is without merit. *See* Tex. R. App. P. 38.1. Limitations is not suspended due to a record titleholder's ignorance of what it owns. *Nat. Gas Pipeline Co.*, 124 S.W.3d at 198. The record on appeal also does not include any answer to the counterclaim in which Scribner alleged any basis for tolling the five-year statute, thus waiving the defense. *See* Tex. R. Civ. P. 63; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).

**A.** **Any acknowledgement of title in 2016 did not preclude limitations from running in favor of Appellees.**

As explained above, an acknowledgment of title precludes limitations from running in favor of an adverse-possession claimant only if it occurs before limitation title is completed. *See Bruni*, 166 S.W.2d at 88. Scribner raised no argument in the trial court or on appeal disputing April 2010 through April 2015 as the relevant time period for the five-year statute or disputing Appellees' adverse-possession claim based on the tacking of successive interests from Latigo through Parra. Thus, evidence of an acknowledged title in Scribner after April 2015 does not preclude limitations from running in favor of Appellees under the five-year statute.

Here, all contacts that Scribner contends evidence "acknowledgements of title" occurred in June or July 2016. Those three contacts are (1) Elder's June 10, 2016 emails to Scribner regarding the proposed assignment; (2) Park's June 13, 2016 email to Scribner's wife asking her to have Scribner sign the assignment; and (3) Elder's July 2016 email to Scribner inquiring about the proposed assignment. These events all took place over a year after title matured by limitations in April 2015. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.023, 16.025, 16.030. Scribner cites no evidence of any acknowledgement of title taking place during or prior to April 2015. Accordingly, assuming without deciding that the three contacts at issue constitute "acknowledgements of title" in Scribner, we conclude as a matter of law that they did not preclude limitations from running in favor of Appellees' predecessors in title. *See,*

17

*e.g.*, *Auchterlonie v. McBride*, 705 S.W.2d 183, 186 (Tex. App.—Houston [14th Dist.] 1985, no writ) (holding that appellees' offer to purchase property from appellant did not destroy limitation title, which had already matured).

**B.    Any acknowledgement of title by Elder or Park in 2016 did not create a genuine issue of material fact on whether any possession was adverse to Scribner during the statutory time period.**

As noted above, adverse possession includes a mental component. If the possessor does not intend to appropriate the land, but instead intends to hold the land only until or unless the true owner appears, the possessor's claim of right does not satisfy the appropriation requirement of the five-year statute as the possessor does not have the necessary intent to claim the land. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.021(1), 16.025(a); *Calfee*, 544 S.W.2d at 642. Again, Scribner raised no argument in the trial court or on appeal disputing that the relevant time period for the five-year statute is April 2010 through April 2015. Instead, Scribner attributes the actions of Elder and Park in 2016 to Appellees and then argues that the summary-judgment evidence reflecting their "acknowledgments of title" in him raised a fact question on whether the acknowledgements negated an intent to claim an interest adverse to his claim of title. We disagree.

Scribner's argument fails to acknowledge the existence of successive periods of possession in this case and that Appellees did not have possession prior to completion of the statutory bar. The record reflects, and Scribner does not dispute, that Latigo, Hanaco, Duncan, Grace, and A&G possessed all or a portion of the working interest

18

in the lease at various times between April 2010 and April 2015. Consequently, it is the intent of Latigo, Hanaco, Duncan, Grace, and A&G during each of their respective periods of possession that is relevant to the issue of whether the possession was adverse to Scribner during the five-year limitations period. *See, e.g., Collins v. Ivey*, 531 S.W.2d 357, 359 (Tex. App.—El Paso 1975, writ ref'd n.r.e.) (holding that it was immaterial whether appellee's actions in inquiring about acquiring an interest in the land at issue was an acknowledgment of appellants' title during the limitations period because appellee did not possess the property while title was maturing by limitations).

Like in the trial court, the sole authority Scribner cites in support of his argument on appeal is *Tex-Wis Co.* That case does not support the proposition that any "acknowledgement of title" by Appellees, who obtained possession after April 2015, is relevant to the question of whether the possession by any of their predecessors was adverse during the already-expired, five-year limitations period.[14] In *Tex-Wis Co.*, the defendants appealed a judgment that the trial court rendered in favor of the plaintiffs after a jury found that the plaintiffs, and not the defendants, had adversely possessed two tracts of land under the three- and ten-year statutes. 525 S.W.2d at 233–34. At trial, a defendant's president testified that he had offered to buy

---

[14]Scribner does not contend that the intent of Appellees is relevant when neither possessed the leasehold interest during the limitations period.

the land in controversy from the plaintiffs in 1964.[15]  *Id.* at 235.  On appeal, the defendants argued, among other things, that the evidence established that they had adverse possession of the tracts under the three- or ten-year statutes and that the jury findings to the contrary were against the great weight and preponderance of the evidence.  *Id.*  The Waco court affirmed, explaining that "[t]he acknowledgement of title in plaintiffs by [defendants'] offering to buy the land in controversy precluded any limitation running in favor of defendants after 1964 as a matter of law and is evidence showing their possession at any time was not adverse to plaintiffs."  *Id.*  The Waco court did not address the relevance of an acknowledgment of title that was made by a party who did not possess the property at issue at any time during the limitations period.

Turning back to the instant case, Elder and Park made all the contacts that Scribner contends constitute "acknowledgments of title."  We assume without deciding that the actions of Elder and Park constitute "acknowledgements of title" in Scribner and that Elder's actions are attributable to any individual or entity he represented in connection with his work.  Scribner cites no evidence in the summary-judgment record, and we have found none, by which we can reasonably infer that

---

[15]The opinion states that the president testified that he had offered to buy the tracts "from defendants."  *Id.* at 235.  Our reading of the opinion is that the reference to "defendants" in this sentence is a typographical error that should have read "from plaintiffs" because in the paragraph that follows that sentence the Waco court construes the offer to buy the land as an "acknowledgement of title in plaintiffs."  *See id.*

Elder's and Park's contacts with Scribner in 2016 have any bearing upon the intent of Latigo, Hanaco, Duncan, Grace, or A&G to appropriate the working interest between April 2010 and April 2015.[16] Scribner also cites no evidence, and we have found none, indicating that Elder represented Latigo, Hanaco, Duncan, Grace, or A&G in 2016 in connection with any of his actions. On the contrary, Elder testified in his declaration that he represented Parra in 2016. When Elder emailed Scribner on June 10, 2016, he copied Park, who has an interest in Parra. Scribner also cites no evidence, and we have found none, indicating that Park had any affiliation with Latigo, Hanaco, Duncan, Grace, or A&G.

Our review of the summary-judgment record identifies no evidence of actions attributable to Latigo, Hanaco, Duncan, Grace, or A&G to acknowledge title in Scribner at any point in time. There is testimony in Scribner's declaration in which he stated that Elder had told him "in his June 10, 2016 email" that he represented Hanaco. The June 10, 2016 emails and their attachments, however, do not identify any express or implied statement by Elder that he represented Hanaco. Thus, the communication that Scribner cites does not contain the statement he relies upon. In that circumstance, Scribner's affidavit did not create a *genuine* issue of material fact that precluded summary judgment for Appellees. *See* Tex. R. Civ. P. 166a(c); *Davis v. Conveyor-Matic Inc.*, 139 S.W.3d 423, 429 (Tex. App.—Fort Worth 2004, no pet.) ("A

---

[16]We reach the same result regardless of whether the July 2016 conversation between Elder and Scribner took place.

21

genuine issue of material fact is raised by presenting evidence on which a reasonable jury could return a verdict in the nonmovant's favor."); *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 11–12 (Tex. App.—Fort Worth 2002, no pet.) ("A material fact issue is 'genuine' only if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party.").

Finally, Scribner argues that Appellees "knew of the break in the chain of title" or "knew about the existence of the [2002 Assignment]," claiming evidence of such knowledge created a fact issue on ownership. We disagree. The summary-judgment evidence reflecting knowledge (at least by Elder and Park) of a break in the chain of title following Elder's discovery of the 2002 Assignment in 2016 did not raise a genuine issue of material fact precluding summary judgment. Scribner's argument concerns the existence of a deficiency in record title from his father to Parra, rather than any relevant intent to appropriate real property. Satisfaction of the statutory requirements cannot be defeated by a lack of knowledge of the deficiency of record title or by the absence of a realization that there could be other claimants for the property. *See Calfee*, 544 S.W.2d at 642.

Again, Appellees' predecessors in title had already performed the acts necessary to establish adverse title before Appellees knew about the break in the record title. Knowledge of a possible break in the chain of title through Scribner might prompt an investigation into the property's title, but that knowledge is no evidence that Appellees would disavow the title created by the actions of the parties conveying title

22

to them.  Further, Scribner is again relying upon events that occurred too late to be of help to him.  If Appellees' acknowledgements of title are irrelevant because Appellees did not possess the property during the limitations period, then Appellees' knowledge of a record deficiency prompting such acknowledgements is also irrelevant.

With the exception of one issue, Scribner does not challenge that Appellees have established limitations title.  For all the foregoing reasons, we conclude that the "acknowledgements of title" that Scribner relied on in an attempt to avoid summary judgment did not create a fact issue on whether possession was adverse for purposes of the five-year statute.  The summary-judgment record establishes all the other necessary elements to demonstrate limitations title.  Thus, the trial court properly quieted title in Parra, decreed that it was the owner of the subject property, and ordered that Scribner take nothing on his causes of action against Appellees that relied on his claim of title.  Accordingly, we overrule Scribner's sole issue.

## VI.    CONCLUSION

Having overruled Scribner's sole issue, we affirm the trial court's order and final judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  October 17, 2019

23